Judge Owsley
delivered the ppinion of the court.
Although, in some cases, where evidence has been intro- *183 áuced on both sides, it may be proper for the purpose of obtaining substantial justice, to set aside a verdict clearly and palpably against the weight of evidence; yet as in the present case there b«ve been two concurring verdicts in favor of the appellee, although in our opinion against the weight of evidence; we do not consider ourselves authorised to disturb the decision of the court below in overruling the motion of the appellant for a new trial.
Bibb for appellant, Pope for appellee.
C^es may set aside a verdi tclear-blv''Gainst tne wefgt tof ev dence.tho* evidence be introdnc’don eaCli side.
tho* against evid'enS11*'0* But a second concuiw ring- verdieft should not be set aside,
The judgment must be affirmed with cost and damages,
The counsel for the appellant filed the following petition:
The counsel for the appellant respectfully solicits a re-argument, to induce the court to grant his request, he suggests these points as worthy of consideration:
Dougherty, the appellee, bad judgment for $1,500 da mages in slander aliedged in Dorsey’s saying the appellee “burnt my mill.” Dorseyjustified the charge.
The courts below and above declare the finding of the jury is against the weight of evidence; and the judge below declared he was dissatisfied wit-h the verdict.
The general rule, that a finding against the weight of evidence is cause for a new trial, is acknowledged by the court in the opinion delivered.
But this case is made an exception to the general rule, because of the concurrent opinion of the tw7o juries.
The counsel most respectfully suggests, that these two concurrent findings should not weigh down th general
Because the first finding is not entitled to the consideration of the verdict of a jury. The judge set aside that finding, because of the infancy of one of those empannel-led on the jury. The fact of infancy not having been discovered until after the finding, and the authority of Vance vs. Hastell, 4 Bibb, 191, (and the cases there cited,) is full for so doing. When we talk of setting aside the verdict of a jury and granting a new trial, we are not generally very nice or precisely accurate in the choice of expressions. We mean, however, and the law means, by a new trial and the granting or refusing one in relation to the verdict of juries, that controling and supervising power of the court in overhaling and investigating the decisiens of the jury upon matters, properly within their province, wherein the court But in legal revises the merits and body of the decision. *184 phrase and effect, there is great difference between the find* ing of twelve qualified jurors, and the finding of a qualified number short of twelve. The finding of the first is called a trial, and the supervising that decision and setting it aside for the purpose of calling a second jury, is properly granting anew trial. Atrial by less than the proper number of qualified jurors, legally empannelled, is called a mistrial. This distinction, though not familiar in common language, is a lega! and proper distinction: See Jacob’s Law Diet. “Trial.”
“ft is a mistrial for a tiling to be t ried before a judge who “hath interest, &c.” “If the cause is tried by a jury from “a wrong county, orthere be any errorin the process, or it is “directed to a wrong officer, &c. it is a mistrial.” “If matter of record is tried by a jury, it will be á mistrial.” “If “the issue tried be not joined, it is not a good trial, &c.” “On a mistrial, judgment may not be given, but shall be arrested, &c.”
These cases suffice to shew the distinction; and as often as the record should exhibit á case of mistrial, by eleven or any other number short of a legal and full jury, so often ivould the court below or this court arrest the judgment, even to the hundredth time, unless the party had waived his cause of objectioh. But the party here had not discovered the fact of the infancy of the juror in time to make the objection, be therefore did not waive it as declared by the cases before cited. The first finding of the jury,, therefore, was a mistrial not to be reckoned as a good trial, or as a verdict and the arresting of judgment ancf ordering a venire de novo, was not properly a new 'trial granted, but correcting a mistrial. The presence of a qualified juror to supply the place of an infant, might have an important effect; and in this case that juror might have enlightened and strengthened Mr. Hunter, of the first jury, who seems to have been in doubt and difficulty, and overruled in bis opinion.
2d. Both these verdicts are acknowledged by the opinions delivered by this court, to be against the weight of evidence.
3d. The court ought not to permit a party to fall a victim to injustice, proceeding from the whim, licentiousness or indiscretion of a jury, so long as they have the legal power of revising and overhaling an improper and unsatisfactory finding against the weight of evidence. The stat- *185 lite has prescribed the rule, that “not more than two new “trials shall be granted the same party in the same cause.”'a This is the only rule which the courts should introduce, as to number, so long as they are dissatisfied with the verdict as being against the weight of ovidence.
The controlling power of the courts over juries, by granting new trials, is necessary for the purposes of justice. Juries are liable to various influences, operating severally upon each juror, by veins arid pulsations, too minute to be discovered singly, but visible when united in the body of a verdict, against the^ober opinions of the courts of original and appellate jurisdiction, and found against the weight of evidence.
The latitude given to this controlling power, by the statute before recited, is not too great for the attainment of justice against the popular impulse to the jury on the one hand, and to set a due restraint and safeguard upon the courts on the other. In narrowing the limits by a rule of decision as contained in the opinion, the judiciary will be semi emasculated by its own hand. Such a rule of decision is seemingly contrary to law, by prescribing a rule to the courts below different from that declared by the legislature.
As to the facts* there seem to be clearly established, that Dorsey’s mill was burnt. Dougherty repeatedly, in the settled hatred of his heart again$J: Dorsey, threatened to “destroy and consume,” and this in speaking of Dorsey’s improvement whilst the mill was building.
The mill was not burned by accident. Dorsey had no enemy in the vicinity but Dougherty; he lived close by— had the malice and the opportunity to execute his threats.
After the fact, and upon being charged to his face with the burning of the mill* he did not deny it, hut again and again attempted his justification by alledging the land was his, and he had a right to do as he pleased with what was on it. He is a man of slender character.
Yet Dorsey, for making a charge* in which he is supported .by such strong evidences as that the neighborhood decided Dougherty’s guilt before Dorsey came to the mill, is to pay $ 1,500 for a character not Worth as many pence. Shall truth be tongue-tied, bound and scourged with 1500 stripes, each stripe inflicting a dollar’s worth of smart? Will not this court interpose in her behalf, whilst they have the power, at least so far as to untie the shackles and let *186 lier have another trial with her destroying and consuming, adversary?
As to the plea of justification; — it is supported by these witnesses on the last trial:
Daniel Farley — As to Dougherty’s saying he could not be hurt for destroying property on his own land.
Tagne — Same answer of Dougherty upon his being told it was the general opinion he had burnt the mill, and asking the witness to befriend him; he had got into a narrow place.
May — He would prevent Dorsey from sawing a season;— he would break his saw, &c.
Lemaster — Told Dougherty he was suspected for burning the mill. D. said if he did he had a right to do so, it was his own land.
Johnson — Told Dougherty he could not expect forgiveness and redemption, unless he would confess the crime of burning the mill, and pay for it. Dougherty replied to Townsend, if a man was to build a house on your land, would you not have a right to destroy it? That Dorsey had built the mill on his (Dougherty’s) land, and he had a right to destroy it.
H'dl — Whilst the mill was building, pltff. said Dorsey need not to build, he (.pltff) could pull down and consume as fast as Dorsey could build.
JUillcr — The morning after the mill was burned Dougherty came by, &c. Witness then observed to pltff, it was a poor-way to take revenge. No reply.
Dorsey had no other enemy in the neighborhood.
Townsend — Dorsey told the. pltff he ought to repent, and pay him for the mill. Pltff turned to witness and asked, if a man built a house on your land, might you not destroy it? and said if he had burnt the mill he had a right to do it.
Bartlett — Dougherty said he had given notice in writing to Dorsey, that if be built, it was at hiS risk, and in a conversation about burning the mill.
Follice — PI is attempt to escape when they went to arrest him. General suspicion in the morning after the fact, that pltff. had burnt the mill.
Carr — Same in substance as Miller.
Lane — Attempt to escape.
Jos. Wright — Dorsey might go on to build, that he, pltff could “pull down and consume as fast as Dorsey could *187 build, and would do it.” Attempt to escape when they went to arrest him. ■
Jjicy Wright — Same threat to “pull down and consumed’
The characters of only two of these witnesses were assailed, viz. Jos. Wright and Hill: these two are the least important witnesses of the facts, in support of the plea of justification. The only contrariety of evidence is as to the character of these two witnesses, and as to the character of Dougherty; who is proved tobe of bad character by some of pltff’s witnesses called to attack tbe character of Wright and Hill. The characters of Hill and Wright, and the character of Dougherty are impugned and supported by witnesses on the one side and the other. Leave these characters to shift for themselves as doubtful, still the evidence in support of the plea of justification is uncontradicted.
All which is most respectfully suggested for the consideration of the court.
BIBB for appellant.
But, on consideration, the court overruled the petition, and affirmed the decision.
Bibb for appellant, Pope for appellee.

 1 Lit. 500.