The Chief Justice
delivered the opinion.
Samuel and Robert Purviance being the proprietors of ⅛ large quantity of land, in Henderson’s grant, conveved it, in trust, to Samuel Moale. He Sold it to Henry Purvi-ai.ee for $s1(jü,(j00, who mortgaged it to Moale to secure the payment of the purchase money. To foreclose this mortgage a bill was filed in the circuit court of the United Slates for the district of Kentucky, which decreed a sale of the premises and appointed commissioners for that purpose, who were directed to sell in such parcels as were likely to be most productive, and on a credit of six months, taking negotiable not’s with two good endorsers. Henry Clay was the counsel who conducted that suit, and had, as *486 is admitted, received an appointment from the chancellor-of Maryland, as trustee to manage the estate. The com-; missioners, under the decree of the Federal court, proceeded to sell th? land, and aamuel Hopkins became the purchaser cf various parcels amounting iu the whole to the sum of $13,504, but instead of giving his negotiable note for the purchase money, he accepted, in pursuance of an arrangement between him and Clay, two bills of exchange which Clay drew upou him for the amount, payable in Baltimore, and executed a deed of trust upon certaio lands and slaves as a collateral security for the payment of these bills. The bills were dishonored, protested and returned. After various delays in completing the payment of them, Hopkins and Clay, the latter being about to leave the state and be absent for some time, joined in a conveyance of the land and slaves, intrust, to John H Morton, who,, if pavmeot were not made by a time therein specified, was to sell as much of the property as might be necessary to pay the amount of the bills, with damages and interest. Payment not having been made by the time specified, Morton was about to proceed to sell, when Hopkins filed this bill to restrain the sale, claiming sundry credits against the demand. 1st. He claims that he acted for several years as the agent of Henry Purviance, whilst he was the agent of Samuel and Uob’t. Purviance, in effecting sales of land in the grant, and that he has not been remunerated for his services, for the value of which he insists he ought now to be credited. 2d. He contends that the amount of the several parcels of land, purchased by him, was $ 12,507 instead of $13,504, for which the bills of exchange were drawn, by mistake, and claims a credit for the difference between those sums. 3d He insists he ought not to be charged with damages upon the protest of the bills of exchange. 4th. He alleJges that he is responsible to five persons, whose names he mentions, for titles to land sold to them by Henry Purviance, agent for Sam’l. and iiob’t. Purviance, and lie i sis's that he ought to be allowed to retain in his hands a sufficient sum to secure him against the effect of that responsibility. And 5th. he claim* a credit for the amount of a bill of exchange on Smith, Dorsey & co. being for $1162 27, paid the 22d Aug. Ibl3.
He alledges that Henry Purviance became insolvent and died, and that Sam’!. & Rob’t Purviance are dead, and be makes-the unkno wn heirs of the two latter, Moaleg, *487 Olav and Morion, defendants. The answer of Clay was alone filed, and was admitted as the answer of all the de* r _ . ¶ /• fendants. He controverts the whole of the credits claimed by Hopkins except the last, above mentioned, which he admits to be correct. The injunction was, on motion, in the progress of the cause, dissolved, as to part, and on the final hearing, the injunction was made perpetual for the amount of the credit admitted by Clay, and for thé sum of $1351) 40, being ten per cent, damages claimed by Ciay upon the protested bills of exchange, and the injunction was dissolved for the residue of which it had not been before dissolved, and each party were decreed to pay their own costs. From that decree both parties have appealed. On the part oí Hopkins it is contended that he was entitled to other credits besides those for which the injunction was perpetuated, and that the decree is erroneous in not giving him bis costs. And on the other side, it is contended that the injunclion should have been dissolved as to the ten per cent, damages upon the amount of the bills of exchange.
An agent, istias ^ fir compensati’n ?“ he has no Hen on the lands -ias agency.0
The only credit not allowed by the decree of the circuit court, to which there was an attempt in argumentan this court, to maintain Hopkins’ title, is that which is founded upon his claims to compensation for his services as agent for Henry Purviance. The evidence shews, beyond doubt, that he was the agent of Purviance for several years and that he was, in that character, at much trouble and ex-pence in selling lands and surveying them, and in receiving money and paying it over to Purviance ; and he was, no doubt, entitled to a remuneration for those services. Rut as he was in the habit, during his agency, of receiving and paying over money, the presumption is strong that be has been paid, by retaining what was considered by Purviance and himself as a sufficient compensation. This presumption might have been repelled by shewing that he had in fact paid over to Purviance all the money he received, but this fact is not established by the proof in the cause. On the contrary, it appears that he has ed more money than he has proved that he has paid over to Purviance or otherwise accounted for.
Supposing, however, the claim to be unsatisfied, still it would only be a claim upon the personal liability of Purvi-anee, and could, upon nó principle constitute a lien upon the lands which would follow them in the hands of *488 the trustee; If indeed the services rendered had.reculted ⅛ the benefit of the trust éstate, the trustee might have been tntdef bd equitable obligation to satisfy the claim. But-such ⅛ not shewn to be the case. Even- the nature of the trust or: the object for which it wascreated does not appear. The circuit court, therefore^ correctly rejected this demand.
In general a a^d'iscrefon ov’r t e costs of a suit.
⅝ A bill of bXCf6citizen of this state, onanoth’r ci-e*™te* on protesi, does not decent! ^ama-ges.
The other claims set up by Hopkins and not allowed by ¡the circuit'court, are clearly not sustained by the evidence in the cause, andas they have not been attempted to be maintained by his counset in tins court, we shall pass them over without further, notice.
''With respect to the decree for costs, it is sufficient to retnar^ *^®*» >n general, the chancellor ha* a discretion, 88 ,0 the costs of a suit, and as much of the casts in this case appears to have been incurred by Hopkins, in an attempt to shew bmself entitled to credits which he has failed to establish, we cannot say that the circuit court has abused its discretion in dividing the costs of the suit.
There exists, therefore, no error in the decree of which, on l he part of Hopkins, t here is any just cause to complain.
It remains then to enquire whether the perpetuation of the injunction, for the ten per cent, damages, on the amount of the bills of exchange, was an error tothe: preju-^’ce °l Clay. Hopkins, in the deed of trust, does not stipulate for ⅛⅝ payment of ten per cent, damages, but for the pay ment of damages generally, without specifying the ra,e or 1 '1⅜ amount, and the extent of bis obligation, there* fere, can only be inferred from the law of the case. Clay claims.the ten per cent, exclusively in virtue of the acts of Assembly of this state concerning bills of exchange., The acI of 1T93,. 1 ■ Lit*. 178, provides, “ that if any person or persons shall draw or endorse, any bill or bills Of exchange, upon any person or persons out of this state', and the same being returned unpaid, with a'legal protest, the drawee thereof, and all otliers concerned, shall pay the content of the said bill or bills, together with legal interest from the time said bill or bills were protested for non* payment, the charge of protest, and ten percent, advance for the damages thereof.” The same provision is reenacted. in the 5t!i sec. of the act of 1798, 2 Litt. 103. bul it is confined bv the latter act to the-case1 of bills drawn' anon some person out of this state and within some of the United- States.- These are the onlyacts in relation *489 td tins subject, and it is obvious, from an inspection them, that this case does not come within the letter of either of them, for the bills in question were drawn upon Hopkins who was within this stale, and according to the plain import of the words of those acts, they only embrace the case of bills drawn or endorsed upon persons out of this state. But it is contended as the bills were payable out of the state that they are within the reason upon which those acts are founded, and therefore it is inferred that the case is one which comes within the intention of the leeis-c lature and that those acts ought to be construed to era-brace it. It is certainly proper, in some cases, to resort to the reason of a law for the purpose of discovering the intention of the legislature. This may be done where Ihere is an ambiguity arising from ihe use of words of doubtful import, or from an apparent coi.fb; lion between the diff- rent provisions of the law ; but it cannot be done with propriety where there is no such ambiguity, and with respect to the acts in question it cannot be pretended that there exists any such ambiguity. The words used by the legislature are clear and unequivocal in their import and do not admit of a difference of construction, aod in such case the legislature must be taken to mean what they say and nothing more er less, for where there is no ambiguity there can be no room for construction — ubi nulla est ambi-guitas, ibi nulla expositio contra verbaJienda est.
a resort t* the reason of a statute, ts ^r'nS a. case w-1 hin i i s purview, can only be had. whe!’e ‘here ¡tyof-xpression, no room ,s leH fr!r wTer^tbe0*1 language is piaba,
Wicklijfe, for Clay, Pope, for Hopkins,
Upon the whole, therefore, we perceive no error in the decree of the circuit court, it must therefore be affirmed» each parly paying the costs of their respective appeals.