CASE 71.—PERSONAL INJURY ACTION BY LEWIS DANIEL AGAINST THE LOUISVILLE & NASHVILLE R. R. CO.—January 29.

# Louisville & Nashville R. R. Co. v. Daniel

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1. Appeal and Error—Review—Questions of Fact—Successive Verdicts.—Civil Code Practice, section 341, providing that a party shall not be granted more than two new trials upon the ground that the verdict is not sustained by the evidence, precludes reversal of the judgment and remand for a new trial upon the sole ground that the verdict is not sustained by the evidence, where there have been three verdicts upon substantially the same evidence for the same party, notwithstanding either of the first two verdicts may have been set aside for errors of law.

2. Same—Questions of Fact—Successive "Verdicts."—A trial upon which the jury has failed to agree will not be considered as one of the "verdicts," within Civil Code Practice, section 341, precluding sending the case back for a new trial upon the ground that the evidence is insufficient to support the verdict, where there have been three verdicts upon substantially the same evidence.

3. Same—New Trial—Number That May Be Granted.—Civil Code Practice, section 341, providing that a party shall not be

granted more than two new trials upon the ground that the verdict is not sustained by the evidence, does not limit the right to reverse the judgment and grant a new trial where prejudicial errors of law have been committed, or the verdict is so excessive as to make it plain that the jury must have been influenced by passion or prejudice.

4. Damages—Personal Injuries—Excessive Verdict.—A verdict of $11,500 for personal injuries causing great pain resulting in the loss of the right arm near the shoulder, and permanent injury to the other parts of the body, was not excessive.

5. Appeal and Error—Harmless Error—Form of Question.— Though it would have been better practice, in the introduction of evidence to show plaintiff's sobriety and industry; to have asked witness whether plaintiff was an industrious, sober man, yet where witness said that he had known plaintiff all his life, and was acquainted with his general reputation for sobriety and industry, and that his reputation in those respects was 'good, it was in substance the same as if witness had testified directly from his personal knowledge, and error in the form of the question does not require a reversal.

WADDELL & DEMPSEY and B. D. WARFIELD for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. On this third appeal of this case, the testimony for the plaintiff is substantially weaker, and that for defendant is substantially stronger than on the former trials. (L. & N. R. R. Co. v. Daniel, 122 Ky. 256; Same v. Same, 31 Ky. Law Rep. 944.) And, inasmuch as, on the trial from which this appeal is prosecuted it conclusively appeared from the physical facts and from uncontradicted and unimpeached testimony that plaintiff could not have been injured in the manner stated by him, but that he was injured in jumping from train No. 57 on which he beat his way to Madisonville, and while the train was in rapid motion, defendant's motion for a peremptory instruction should have been sustained. (Sinclair's Admr. v. I. C. R. R. Co., 112 S. W. on p. 911.)

2. In any event, the judgment must be reversed because the verdict on which it was rendered is not sustained by sufficient evidence. (Civil Code of Practice, sec. 340; Hurt v. L. & N. R. R. Co., 116 Ky. on p. 553; C., N. O. & T. P. Ry. Co. v. Zachary's Admr., 32 Ky. Law Rep. 678; L. & N. R. R. Co. v. Hall, 115 Ky. on p. 580.)

3. Defendant's testimony overwhelmingly refutes, and demon-

strates the falsity of, plaintiff's wholly uncorroborated and incredible testimony.

4. This court is not precluded from reversing the judgment on this appeal because it is the third appeal in this case. The reversal on the first appeal was not rested upon the ground that the verdict was not sustained by sufficient evidence. The reversal there was rested on three other grounds. Therefor, section 341, Civil Code, which provides among other things: "Nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence," does not apply on this appeal. But one new trial has been granted by this court in this case on the ground that the verdict was not sustained by sufficient evidence. (L. & N. R. R. Co. v. Daniel, 31 Ky. Law Rep. 944.) "Errors of law that are prejudicial to the substantial rights of the unsuccessful party will always authorize a new trial." (City of Bardstown v. Nelson County, 121 Ky. 737.) In L. & N. R. R. Co. v. Ricketts this court reversed four judgments obtained by plaintiff in the trial court: (1) 93 Ky. 116; (2) 96 Ky. 44; (3) 18 Ky. Law Rep. 687; (4) 21 Ky. Law Rep. 662. And in L. & N. R. R. Co. v. Carter, this court reversed three judgments recovered by plaintiff in the trial court; (1) 23 Ky. Law Rep. 2104; (2) 25 Ky. Law Rep. 759—response, 25 Ky. Law Rep. 1303; (3) 27 Ky. Law Rep. 748.

5. The trial court erred in admitting evidence of reputation as to plaintiff's habits of sobriety and industry. These habits should have been proven as facts and not as a matter of general reputation. (Abbott's Trial Brief—Mode of Proving Facts, Ed. 1901, Title, Habit, 370; 16 Cyc., Title Evidence, 1211; Buffalo Creek Coal Co. v. Hodges, 30 Ky. Law Rep. 346.)

6. The damages are excessive. (L. & N. R. R. Co. v. Lowe, 118 Ky. 260, 276; Same v. Kingman, 18 Ky. Law Rep. 82.)

7. The court erred in instructing the jury. Instructions tacitly approved by this court, given on former trials, were not properly given on the last trial when the testimony was materially different for plaintiff, and weaker for him, than that given on the former trials. (U. S. F. & G. Co. v. Board of Education, 27 Ky. Law Rep. 865; Bridges v. McAllister, 106 Ky. 791; Klauber v. San Diego Street Car Co., 98 Cal. 105, 32 Pac. 876; Ohio & M. Ry. Co. v. Hill, 34 N. E. 646; U. S. F. & G. Co. v. Blackley Hurst &. Co., 27 Ky. Law Rep. 392; Adams v. Thornton, 90 Pac. 713; Horn v. Arnold, Schwinn Co., 124 Ill. App. 185.)

8. Punitive damages should not have been authorized. There was not testimony on which to predicate such an instruction. (L. & N. R. R. Co. v. Joshlin, 33 Ky. Law Rep. on p. 517; Same v. Vach's Admr., 33 Ky. Law Rep. —, 112 S. W. 869; South-

Louisville & Nashville R. R. Co. v. Daniel.

ern Ry. Co. in Ky. v. Lee, by &c., 30 Ky. Law Rep. 1360; Same v. Brewer, 32 Ky. Law Rep. 1374; I. C. R. R. Co. v. Lence, 30 Ky. Law Rep. 988; Railroad Companies v. Offutt 31 Ky. Law Rep. 936; L. & N. R. R. Co. v. Mount, 31 Ky. Law Rep. 210; Same v. McNary's Admr., 32 R. on p. 1273; Lexington Ry. Co. v. Fain, 25 Ky. Law Rep. 2243; Southern Ry. Co. in Ky. v. Goddard, 28 Ky. Law Rep. 523; Henderson City Ry. Co. v. Lockett, 30 Ky. Law Rep. 321; Same v. Hawkins 28 Ky. Law Rep. 364; McHenry Coal Co. v. Sneddon, 98 Ky. 686; Shearman & Redfield on Neg., sec. 748; Covington Saw Mill Mfg. Co. v. Drexilius, 120 Ky. 493.)

GORDON, GORDON & COX for appellee.

SYNOPSIS OF BRIEF FOR APPELLEE ON THE THIRD APPEAL.

1. This is the third appeal in this case from a judgment for appellee rendered on the fourth trial of the case, in the Hopkins circuit court, the evidence on each trial being substantially the same, and as the case has been twice reversed by this court because in its opinion the verdict is not sustained by the weight of the evidence, it cannot now be reversed on the same ground. (L. & N. R. R. Co. v. Daniel, 28 Ky. Law Rep. 1148, 31 Ky. Law Rep. 944.)

2. Notice to appellant's station agents of the use of the passway by the public, was due notice to it thereof. (Glenn's Admr. v. L. & N. R. R. Co., 28 Ky. Law Rep. 949.

3. This court is precluded from reversing this judgment by section 341, Civil Code. (Civil Code of Practice, sec. 341; L. & N. R. R. Co. v. Daniel 28 Ky. Law Rep. 1148; L. & N. R. R. Co. v. Daniel, 31 Ky. Law Rep. 944.)

4. This court by its opinions on the two former appeals has settled the law of the case, and held, (1) that the case ought to go to the jury, and (2) that the instructions given the jury were correct, and as the only question left in the case is one of fact the court will presume that the jury obeyed the instructions of the court. (I. C. R. R. Co. v. Stewart, 23 Ky. Law Rep. 639.)

5. Questions of fact are for the jury and their verdict will not be disturbed unless "palpably and flagrantly" against the evidence, which this verdict is not. (I. C. R. R. Co. v. Brasher, 29 Ky. Law Rep. 1278; L. & N. R. R. Co. v. Eden, 29 Ky. Law Rep. 367; Holcomb Lobb Co. v. Kaufman, 29 Ky. Law Rep. 1006; Lexington Ry. Co. v. Herring, 29 Ky. Law Rep. 795.)

6. Independent of section 341 of the Code, the fact that there have been four trials of this case, on the same evidence, not one

Louisville & Nashville R. R. Co. v. Daniel.

rsulting in a verdict for appellant, and three resulting in verdicts for Daniel, approved by the trial court, requires that this judgment be affirmed. (L. & N. R. R. Co. v. Graves, 78 Ky. 74; L. & N. R. R. Co. v. Shumaker, 23 Ky. Law Rep. 2458; C., N. O. & T. P. Ry. Co. v. Halcomb, 32 Kt. —; Board of Internal Improvement v. Moore, 25 Ky. Law Rep 16; L. & N. R. R. Co. v. Vanarsdell, Admr., 25 Ky. Law Rep. 1452; Southern Ry. Co. v. Goddard, 32 Ky. Law Rep. 1392.)

7. The hung jury on the third trial is to be taken on this appeal as though it had resulted in favor of Daniel. (Supreme Lodge K. of H. v. Lapp's Admr, 25 Ky. Law Rep. 74; L. & N. R. R. Co. v. Connelley's Admr. 9 Ky. Law Rep. 993; Adams Express Co. v. Hines, 1 Ky. Law Rep. 266.)

8. The opinions rendered on the former appeal are the law of the case. (L. H. & St. L. R. Co v. Davis, 32 Ky. Law Rep. 581; Bright's Exor. v. Bright's Legatees, 30 Ky. Law Rep. 834.)

9. The evidence of Daniel's reputation for sobriety and industry was properly admitted as an aid to the jury in estimating his earning capacity. (16 Cyc. (Text) 1275; Campbell v. Bannister, 79 Ky. 208; Comth. v. Nagle, 32 N. E. 861; L. & N. R. R. Co. v. Daniel, 28 Ky. Law Rep. 1148; Words & Phrases, vol. 2, p. 1061; Words & Phrases, vol. 7, p. 6118.)

10. Even if erroneous, the error in the admission of evidence is harmless error, not affecting the substantial rights of appellant, "mere semblance of error that could not have controlled the verdict and ought not to be seized upon to disturb the finding of fact in a case where there has been three trials by jury, and not one of the three resulting in favor of the party complaining." (L. & N. R. R. Co. v. Connelly's Admr., 9 Ky. Law Rep. 993.)

11. The damages awarded by the fourth jury are not excessive for the loss by a young healthy, able-bodied, sober, industrious man, 21 years of age, earning $40 to $60 per month, of the right arm near the shoulder, fracture of skull with concussion of the brain, loss of two toes and other injuries to the foot, where the injury was so severe as to cause him to remain unconscious two weeks and to suffer greatly and continuously ever since.

12. This court on the first appeal tacitly held that $10,000, the verdict of the first jury, was not excessive, and the present verdict is not equal to the first verdict plus legal interest for the four years delay since said first verdict was rendered. (Gray v. Dickinson, 11 Ky. Law Rep. 890; Smith v. Brannin, 79 Ky. 114; C. & O. Ry. Co. v. Judd's Admx., 20 Ky. Law Rep. 1978; Dinkelspeil v. Central Ky. Asylum, 24 Ky. Law Rep. 2240; Ross v. Rees 21 Ky. Law Rep. 856; L. & N. R. R. Co. v. Mattingly, 22 Ky. Law Rep. 489.)

13. L. & N. R. R. Co. v. Lowe, 108 Ky. 26, cited by appellant is not in point on the question of damages.

14. L. & N. R. R. Co. v. Kingman 18 Ky. Law Rep. 82, cited by appellant is not only not in point, but is imperfectly reported, and has been overruled by this court. (I. C. R. R. Co. v. Stewart, 23 Ky. Law Rep. 639.)

15. A third verdict of a jury for the same litigant should not be set aside by this court on account of excessive damages. (Board of Internal Improvement v. Moore, 25 Ky. Law Rep. 15.)

16. The instruction on exemplary damages was proper; it was held tacitly by this court to be proper on the two former appeals; and the same facts proved on each of the trials showed gross negligence. (Kentucky Digest, vol. 1, title, "Appeal and Error," p. 525; Conley v. C., N. O. & T. P. Ry. Co. 98 Ky. 402; National Life Insurance Company v. Anderson, 31 Ky. Law Rep. 415.)

20. McHenry Coal Company v. Sneddon, 98 Ky. 686, cited by appellant has been overruled by this court. ( I. C. R. R. Co. v. Stewart, 23 Ky. Law Rep. 641.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

There have been four trials of this case. On the first trial the damages in favor of appellee were assessed at $10,000. This court, in an opinion that may be found in 122 Ky. 256, 91 S. W. 691, 3 L. R. A. (N. S.) 1190, reversed the judgment awarding this sum for errors of law occurring during the trial, and also "because the verdict was palpably against the weight of the evidence," but held that there was sufficient evidence to take the case to the jury. On the second trial the jury returned a verdict for $6,000. On an appeal from the judgment rendered upon that verdict, this court, in an opinion that may be found in 104 S. W. 344, 31 Ky. Law Rep. 944, reversed the judgment of the lower court upon the ground that the verdict was manifestly against the evidence. In fact, that was the only reason assigned for a reversal. Afterwards there was another trial,

but the jury failed to agree. Upon the trial in which the judgment herein appealed from was rendered, the damages were assessed at $11,500.

Counsel for appellant insist that errors of law were committed by the trial court, but we fail to discover any that would authorize a reversal. The case seems to have been practiced entirely within the lines laid down in the former opinions of this court. It is, however, earnestly contended that, as the verdict is palpably against the weight of the evidence, the judgment should be reversed for this reason alone. The evidence on all of the trials was substantially the same, and as the last verdict, as well as the others, was flagrantly against the evidence—that is to say, upon the evidence a verdict should have been rendered for the other party—we would for this reason remand the case for a new trial, if we did not feel obliged by the provisions of the Code that will presently be noticed to affirm the judgment.

Section 341 of the Civil Code of Practice reads: "A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, or in any other action in which the damages equal the actual pecuniary injury sustained; nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence." The first part of this section was contained in the old Code of Practice, but the words "nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence" were added to the section by the present Code, which took effect in January, 1877; and in 1879, two years after the provision in question was inserted in the Code, this court, in the case of L. & N. R. R. Co. v. Graves,

78 Ky. 74, had occasion to consider and construe it.
In that case there had been three trials, and in each
a verdict for the appellee, Graves, and also three
appeals. In the course of the opinion on the last
appeal the court said: ''The case is therefore no
stronger for the appellant than if we had simply said,
on the former appeals, that the verdicts were clearly
against the weight of the evidence. We are still of
that opinion as to the last as well as the former
verdicts. Was it, then, the duty of the court below
to grant a new trial, or is it the duty of this court
to reverse because that court refused a new trial?
The case has been tried three times, and each time
there has been a verdict for the appellee on the same
evidence. The former judgments were reversed for
errors of law. We have decided there was no error
of law on the last trial, and, if we reverse, we must
do so solely on the ground that the verdict is against
the evidence. * * * It is true the reversals of this
case have been upon questions of law; but the fact
still remains that there have been three findings in
the same way upon the same evidence, and, while
the case may not be within the letter, it is clearly
within the spirit of the statute, and it is also within
a rule laid down in the decisions of this court prior
to the enactment of the statute.'' Although two new
trials had been granted by this court because of
errors of law committed during the progress of the
trial, as well as for the reason that the verdicts were
palpably against the weight of the evidence, the court
refused to disturb the third verdict, although it was
also against the weight of the evidence, saying:
''Questions of fact belong primarily to the jury, and
the court only interferes to prevent injustice from
haste, inadvertence, or prejudice; and as the court

has no authority to decide questions of fact in a case properly triable by a jury, if there be any evidence proper to be considered by the jury, if the jury will not give way the court must, that there may be an end of litigation.''

.The construction then given to the provision in question has been followed by this court in L. & N. R. R. Co. v. Shumaker, 67 S. W. 829, 23 Ky. Law Rep. 2458; Board of Internal Improvements v. Moore, 74 S. W. 683, 25 Ky. Law Rep. 15; C., N. O. & T. P. Ry. Co. v. Halcomb, 105 S. W. 968, 32 Ky. Law Rep. 381; Southern Ry. in Ky. v. Goddard, 108 S. W. 890, 32 Ky. Law Rep. 1397. So that it may now be considered as the settled practice that, when there have been three verdicts upon substantially the same evidence for the same party, the third verdict will not be disturbed upon the sole ground that it is not supported by, or is clearly against, the weight of the evidence. And this rule will obtain, although either one or both of the two first verdicts were set aside for errors of law appearing in the record. But there must be three verdicts. If there have been three trials, but the jury in one of them has failed to agree, the trial in which there was not a verdict will not be considered as one of the verdicts within the meaning of the code provision, although in Supreme Lodge of Knights of Honor v. Lapp, 74 S. W. 656, 25 Ky. Law Rep. 74, the court inadvertently said: ''The rule in this State is that where there have been three verdicts for the same party, or two verdicts and a hung jury, the court will not disturb the verdict of the third jury on the ground that the verdict is not sustained by the evidence.'' This code provision however, and the construction given to it, does not limit the right of this court to

set aside verdicts and grant a new trial when errors of law have been committed to the prejudice of the party appealing, or when the verdict is so excessive as to make it plain that it was given under the influence of passion or prejudice. When either of these conditions is made to appear, any number of verdicts may be set aside and new trials granted. City of Bardstown v. Nelson County, 121 Ky. 737, 90 S. W. 246, 28 Ky. Law Rep. 710; L. & N. R. R. Co. v. Ricketts, 52 S. W. 939, 21 Ky. Law Rep. 662; L. & N. R. R. Co. v. Carter, 86 S. W. 685, 27 Ky. Law Rep. 748.

It is further said that the verdict is excessive, and for this reason a new trial should be granted. We cannot agree with counsel in this contention. True it is that the verdict is contrary to the decided preponderence of the evidence; but it does not at all follow from this that it is excessive. Under the evidence there should have been a verdict for the railroad company; but, notwithstanding this, the jury, when they decided to find for the plaintiff, Daniel, were justified in assessing the damages at the amount they did. The injury appellee sustained not only caused him to suffer great pain, but resulted in the loss of his right arm near the shoulder and permanent injury to other parts of his body.

Complaint is also made of errors in the admission of evidence in respect to plaintiff's habits of sobriety and industry. Upon this point, and to illustrate it, a witness was asked: "Q. Are you acquainted with the plaintiff, Lewis Daniel? A. Yes, sir. Q. How long have you known him? A. I have known him all my life. Q. Are you acquainted with the general reputation of Lewis Daniel as to sobriety and industry in the community in which he lives? A. Cer-

tainly I know it. Q. Is that reputation for industry and sobriety good or bad? A. It is good. By the Court: Gentlemen of the jury, you will consider this evidence only in fixing the earning capacity of Lewis Daniel." The argument is made that, although it was admissible to prove that Daniel was a sober and industrious man by those whose acquaintance with and observation of him authorized them to make the statement as a fact known to them, yet is was not competent to prove his general reputation in these particulars. We think it would have been better practice, after the witnesses had qualified themselves to testify by showing that they were acquainted with and had opportunity to know the habits of Daniel, to have asked them the direct question whether or not he was an industrious, sober man. But it is manifest that when the witnesses said that he knew Daniel all his life, and was acquainted with his general reputation for sobriety and industry, and that his reputation in these respects was good, it was in substance and effect the same as if the witness had directly testified from personal knowledge that he was a sober, industrious man. There is, of course, a distinction that may be taken and made between statements made by a witness as a matter of fact based upon personal knowledge, and statements based upon what the witness knows the general reputation of the person to be; but the error in the form of the question is too trifling to authorize a reversal.

The judgment is affirmed.

LASSING, J. (dissenting).

The opinion in this case, as is conceded, upholds the judgment of the lower court, not because it is

right, but because there have been three jury trials of the case, at each of which a verdict was returned in favor of the plaintiff. Two of the judgments based upon these verdicts were reversed. The first reversal was for errors of law, although the court in that opinion said that the verdict was flagrantly against the evidence. The second reversal was because the verdict was not sustained by the evidence. Upon this last appeal the court was again asked to set aside the verdict because it was not sustained by the evidence. Upon the second trial the verdict was for $6,000; upon the last, for $11,500. The evidence upon each trial was practically the same. This court, while admitting the justness of defendant's cause, denies relief, because to grant it would violate the rule of procedure as laid down in the case of Louisville & Nashville Railroad Company v. Graves' Assignee, 78 Ky. 74, and other cases in which the doctrine therein announced has been followed.

The opinion in the Graves Case is bottomed upon two propositions: First, the former rule of practice of this court, as announced in the Dougherty and other cases; and, second, section 341 of the Civil Code of Practice as construed in that opinion. If the opinion in the Graves Case, above referred to, is correct, the court has reached a proper conclusion; but it is my contention that the right to a reversal and new trial in this case is regulated by statute, and not controlled by the Graves Case, or any other case which is not in accord and harmony with the plain provision of the statute. This statute was passed by the General Assembly in 1877, and is now section 341 of the Civil Code of Practice, and is as follows: "A new trial shall not be granted on account of the smallness of damages in an action for an

injury to the person or reputation, or in any other
action in which the damages equal the actual pecun-
iary injury sustained; nor shall more than two new
trials be granted to a party upon the ground that
the verdict is not sustained by the evidence.''

Two years after the passage of this act this court
had under consideration the Graves Case, which was
then here on the third appeal, and refused to reverse
it on the ground that the verdict was against the
evidence, although there had theretofore been no re-
versal upon this ground; the two previous reversals
having been for errors of law. The court in that
opinion said: ''It is true the reversals of this case
have been upon questions of law; but the fact still
remains that there have been three findings in the
same way upon the same evidence, and, while the
case may not be within the letter, it is clearly within
the spirit of the statute, and it is also within a rule
laid down in the decisions of this court prior to the
enactment of this statute.'' The decisions referred
to, as establishing in part the basis upon which the
opinion rested, were those of Dorsey v. Dougherty,
1 A. K. Marsh. 183, and Bennett v. Runyon, 4 Dana,
422.

Of the two verdicts referred to in the Dougherty
Case, one had been set aside by the trial judge for
the reason that one of the jurors who sat in the trial
was discovered to be under 21 years of age. The
verdict supporting the judgment from which the
appeal was prosecuted is the one referred to in the
opinion. Each verdict had been in favor of the
plaintiff. It was the contention of counsel for appel-
lant that a hearing with but 11 jurors was not a trial
within the contemplation of the statute, and that it
should be disregarded; that appellant was entitled

to two trials by legally constituted juries before the statutory inhibition should be applied; and in a most thorough, exhaustive, and to my mind unanswerable petition for rehearing, Judge Bibb, representing appellant, among other things, said: "The controlling power of the courts over juries by granting new trials is necessary for the purposes of justice. Juries are liable to various influences, operating severally upon each juror, by veins and pulsations too minute to be discovered singly, but visible when united in the body of a verdict, against the sober opinions of the court of original and appellate jurisdiction, and found against the weight of the evidence. The latitude given to this controlling power by the statute before recited is not too great for the attainment of justice against the popular impulse to the jury on the one hand, and to set a due restraint and safeguard upon the courts on the other. By narrowing the limits by the rule of decision as contained in the opinion, the judiciary will be semiemasculated by its own hand. Such a rule of decision is seemingly contrary to law, by prescribing a rule to the courts below different from that declared by the Legislature." This petition was overruled without comment. In 1836 the Dougherty Case was approved in the case of Bennett v. Runyon, 4 Dana, 422, which was in many respects similar to it. There had been a verdict in favor of the plaintiff in an ejectment suit. This verdict was set aside by the trial judge, and upon a retrial the plaintiff again recovered a verdict. This the trial judge refused to set aside, and, upon appeal here, the judgment was affirmed on the authority of the Dougherty Case. A reversal was refused for the reason assigned in the Dougherty Case. In both of these cases, which were referred to and relied upon

by the court in the Graves Case as establishing the court-made rule, the court was controlled by a statute then in force, being section 38 of chapter 264 of the Acts of 1796, entitled: "An act to reduce into one the several acts for preventing vexatious suits, and regulating proceedings in civil cases." Said section is as follows: "Not more than two new trials shall be granted the same party in the same cause."

While, to my mind, the court undoubtedly was in error in the Dougherty Case as to what constituted a trial within the meaning of the statute, nevertheless both of these opinions were rested upon the statute; and this being true, and the statute no longer being in force at the time when the opinion was written in the Graves Case, these opinions were not applicable, and should have exerted no controlling influence in determining that case. By the act of 1877, which is section 341 of the Civil Code of Practice, the Legislature sought to abridge, or at least modify, the rule of practice which in the Graves Case is termed the "established rule of practice." This must have been the purpose of the act, else the Legislature was doing a vain and useless thing. There was no earthly necessity for the passage of this law, if it was not intended to change the rule of practice upon appeals in that class of cases where the verdict is not supported by the evidence, and to provide a rule of procedure in such cases different from that which the court had theretofore followed; and yet, although this was the clearly expressed legislative purpose and intent, we find that the court in the Graves Case so construed it as to make it conform to the requirements of the rule of practice as it had theretofore existed, thus completely nullifying and destroying the purpose of the legislative act. The

Graves Case was an old offender. It had been a long
time pending in court. On each of the former appeals
it had been reversed for errors of law and which
upon each reversal the court had said that the verdict
was not supported by the evidence, still the reversals,
as above stated, were for errors of law. Upon the
third appeal Judge Cofer, writing for the court, said
that the case came within the spirit, if not the letter,
of the law as laid down in section 341, above referred
to, and also within a rule laid down by the court
before the adoption of the statute, and a reversal
was therefore denied.

As we have shown, the previous rule of practice,
upon which the court in part rested its opinion, had
no application whatever; for the opinions there re-
ferred to as establishing this rule were based upon
a statute which had been repealed, and hence the
opinion is left to rest upon the construction which
the court gave to section 341 of the Civil Code of
Practice. In place of accepting this statute as writ-
ten and conforming the court's opinion to the re-
quirements of this statute, the court chose rather to
place such a construction upon the statute as would
make it conform to a line of decisions of this court
written under an obsolete statute; and in this lies
the fault of the Graves Case. In order to make sec-
tion 341 mean what the court in the Graves Case
says it means, there must be read into it an entire
sentence, to wit: "Or that the verdict is not sustained
by the evidence coupled with other causes"—so that
the court-made statute reads: "Nor shall more than
two new trials be granted to a party upon the ground
that the verdict is not sustained by the evidence, or
that the verdict is not sustained by the evidence
coupled with other causes." If the Legislature had

meant that, it should have said so; and its failure to so enact this statute is the best evidence that it did not so intend.  It is a primary rule of construction, in arriving at the legislative intent, that a statute unambiguous in its terms must be given that meaning which the ordinary reading of its language warrants.  Words are to be taken in their ordinary, usual, and familiar acceptation and meaning, and what they thus convey when so used must be taken as the expression in its entirety of the legislative intent.  A statute unambiguous in its terms is not open to construction; but it is the duty of the court to conform its opinions to the plain meaning of the statute as written.

Such is the rule of interpretation in the federal court, and in the State courts of last resort, and especially in our court, where no · rule has been more clearly announced and firmly fixed.  In the early case of Clay v. Hopkins, 10 Ky. 485, decided in 1821, this court said: "It is certainly proper in some cases to resort to the reason of a law for the purpose of discovering the intent of the Legislature.  This may be done where there is an ambiguity arising from the use of words of doubtful import, or from an apparent conflict between the different provisions of the law; but it cannot be done with propriety where there is no such ambiguity, and with respect to the acts in question it cannot be pretended that there exists any such ambiguity.  The words used by the Legislature are clear and unequivocal in their import, and do not admit of .a different construction, and in such case the Legislature must be taken to mean what they say, and nothing more or less; for where there is no ambiguity there can be no room for construction."  And again, in the case of Robertson v. Robertson,

100 Ky. 696, 39 S. W. 244, 19 Ky. Law Rep. 29, decided in 1897, Chief Justice Lewis, speaking for the court, said: "When a statute is plain and peremptory, there is nothing for the court to do but enforce it as it is written."

The statute being plain and unambiguous in its terms, it was not open to construction. It needed no judicial intepretation. It stated in plain language, that could not be mistaken, and that was not susceptible of any dual meaning: "Nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence." It will be observed that the Legislature used the word "ground," showing plainly that it had in mind a singular subject. Had it been contemplated that this act was to apply as the court in the Graves case applied it, the Legislature would not have confined the wording of the statute to a single cause for which "not more than two new trials" should be granted.

It may be argued, as it was argued in the Graves case, that this act was passed, as was the act of 1796, for the purpose of regulating or preventing vexatious litigation, and for that reason the court, in applying the statute, is justified in looking to the spirit, rather than following the letter, of the law; but such a practice has been expressly condemned by this court in a long line of decisions, in which it has been held that with the policy or wisdom of the statute the court has no concern, but that these are matters that must address themselves exclusively to the Legislature. In the case of Bosley v. Mattingly, 14 B. Mon. 90, this court said that where the intention of a statute is clear and explicit, and its provisions susceptible of but one interpretation, the evil, if any, must be corrected by the Legislature, and not by the judiciary;

and the doctrine therein announced was followed with approval in the case of Brace v. Shaw, 16 B. Mon. 80, and in a number of more recent decisions.

In the case of Witte v. Koeppen, 11 S. D. 598, 79 N. W. 831, 14 Am. St. Rep. 826, where the construction of a statute was under consideration, the court said that: "In construing a statute a court is not at liberty to disregard its plain and express terms upon any theory as to its spirit. When it is plain and unambiguous courts are not permitted to search for its meaning beyond the statute itself." And in the case of Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am St. Rep. 742, the court said that: "It is a legitimate and recognized rule of construction for a court, in interpreting the Constitution and statutes, to find out their true meaning from the language used, the subject-matter, and purposes of those framing them; but to ingraft upon a Constitution or law something that has been omitted, and which the court believes should have been embraced, is judicial legislation." And in the case of in re Walker's Estate, 110 Cal. 387, 42 Pac. 815, 30 L. R. A. 460, 52 Am. St. Rep. 104, in construing a statute, the court said that: "The duty of the court is simply to ascertain and declare what is in substance or terms declared therein, not to insert what has been omitted, nor to omit what has been inserted." Authorities might be cited in support of this proposition almost without number, and through them all there is a uniformity of expression to the effect that courts will not be permitted to usurp that power which the Constitutions, State and Federal, have reposed in the respective Legislatures. Thus the fundamental error in the Graves case lies in the fact that the court gave to the statute a meaning

much broader and entirely different from that which its terms authorized.

But aside from this, it seems to me, with all due respect to the court, and especially the learned judge who wrote that opinion, that its logic is faulty and the conclusion reached is unsound. In fairness to the juries it should be said that, before they are criticised for returning verdicts not supported by evidence, they should have the case fairly presented and the law correctly given to them. It is unreasonable to demand of the jury that it shall reach a proper and just conclusion based upon faulty premises; and no case should ever be reversed, because the verdict is not supported by the evidence, when substantial errors of law have been committed during the progress of the trial. Until the substantial errors of law have been eliminated it is impossible to tell what the verdict would have been; for, if the jury has reached one conclusion under a given state of facts, it is fair to presume that the same jury would, under a different state of facts, have reached an entirely different conclusion. Jurors want to arrive at the right of every case, and they have no opportunity to do so until the facts are properly presented upon which to base their finding, and the law correctly given by the court to serve as their guide in properly applying the facts. Hence I say that, when the court says that three juries have reached the same conclusion under the same evidence, it overlooked the fact that the law which had been given two of those juries, to serve as a guide to them in applying the facts, had been wrong; and they could not in reason be expected to reach a proper conclusion while following the law as given by the trial court, and which, upon appeal, this court had said was wrong.

It has been written by this court, and is the law, that any number of new trials may be granted for errors of law; and this rule would be of universal application, but for the statute under consideration. In the absence of section 341, any number of new trials could be granted because the verdict was not supported by the evidence, and in applying this statute the court, in furtherance of justice in cases where required, should grant at least two new trials where the verdicts are not supported by the evidence, and where this alone is the ground upon which a reversal is sought. The object of courts is to see to it that justice is done, and in all fairness and reasonableness it should be held that no strained construction should be placed upon a statue which would tend to defeat this end. It is admitted that the application of the construction applied to this statute in the Graves case, above referred to, even though it countenances what appears to be a gross injustice, must deny to appellant any further right of redress. This principle is repugnant to every idea of right and justice, subversive of the best interests of government, and one that must ultimately bring the judiciary into disrepute. Statutes should be literally interpreted, and the opinions of the court made to conform to the statutes when so interpreted. The fundamental principle, upon which the whole theory of our government rests, renders such an interpretation necessary; and the preservation of the three departments of government in their simplicity and integrity can in this way alone be secured. Any attempt on the part of the court to read or interpolate into a statute a meaning other than that which its language plainly imports is an unwarranted encroachment upon the rights and prerogatives of the Legislature, and is an inexcusable

usurpation of power. In disregarding this statute, and in attempting to place upon it a construction that in effect nullifies it, and makes it conform to the opinions of the court written under a statute which was radically different from section 341, the court in the opinion in the Graves case erred, and that opinion, in my judgment, should be overruled, as should all cases which have followed it. If the principle therein expressed is wrong, the sooner it is departed from the better. The court can make no mistake by getting right, and no question is ever truly settled until it is decided right. The course of the law is upward, its aim perfection, and, while this may never be reached, it can at least be approached unto. The doors of the temple of justice should never be closed to those seeking relief until the plain mandate of the law denies them further hearing.

JUDGE BARKER concurs in this dissent.

DISSENTING OPINION BY JUDGE HOBSON:

We are unable to see that the construction of the statute we have followed violates any right of the appellant under the Constitution of the United States or any amendment thereto. The right of appeal to this court is the creature of the statute, and the Legislature may annex any condition it sees fit to it. We are also of opinion that a construction of the statute on a mere matter of procedure, which has so long been acquiesced in, should not be now departed from.

Petition overruled.